**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

EVEREST INDEMNITY INSURANCE
COMPANY,

Plaintiff,

v.

ALL RISKS LTD *et al.*,

Defendants.

Civil Action No. 16-3582 (GC) (TJB)

**MEMORANDUM OPINION**

---

**CASTNER, District Judge**

This matter comes before the Court upon Third-Party Defendants Summit Global Partners ("Summit") and USI Southwest, Inc.'s ("USI") (collectively "USI")[1] Motion for Summary Judgment on all Counts of Third-Party Plaintiff All Risks, LTD's ("All Risks") Second Amended Third-Party Complaint ("SAC") (ECF No. 126). (ECF No. 145.) All Risks opposed (ECF No. 151), and USI replied (ECF No. 156). After careful consideration of the parties' submissions, the Court decides USI's motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons outlined below, USI's motion is **GRANTED IN PART** and USI is granted leave to file a renewed motion for summary judgment consistent with this Memorandum Opinion as to Plaintiff's remaining claims.

---

[1] USI is the successor company to Summit. (Def.'s Moving Br. 34, ECF No. 145-2.) As such, the Court refers to both Summit and USI collectively as "USI."

I.    **BACKGROUND**[2]

All Risks is a wholesale insurer located in Maryland. (Pl.'s Statement of Material Facts ("PSMF") ¶ 1, ECF No. 152; Defs.' Resps. to Pl.'s Statement of Material Facts ("DRPSMF") ¶ 1, ECF No. 156.) USI is an independent insurance broker located in Texas. (PSMF ¶ 2; DRPSMF ¶ 2.)

In February 2004, All Risks and USI entered into a Broker Agreement (the "Broker Agreement"). (PSMF ¶ 3; Defs.' Moving Br., Ex. A, ECF No. 145-4.) Under the Broker Agreement, USI could solicit insurance coverage for its customers from Everest Indemnity Insurance Company ("Everest") by submitting insurance applications to All Risks. (PSMF ¶ 3; *see* Defs.' Moving Br., Ex. A.) In pertinent part, the Broker Agreement provides:

> 4. Disclaimer . . . It is the responsibility of [USI] to service [its] account and to inform All Risks . . . as to the type and amount of coverage to be considered for quotation. All Risks . . . assumes no responsibility toward [USI], policyholder, sub-producer[,] or any other party with regard to the adequacy, amount[,] or form of coverage obtained through any insurance carrier.
>
>        . . . .
>
> 10. Broker Violation . . . In the event [USI] violates this agreement, by failure to pay premiums due or by any other act or omission, [it] shall be liable for all costs and damages incurred by [All Risks] as a result of [USI's] violation including all court costs and reasonable attorney's fees.
>
>        . . . .
>
> 16. Good Faith . . . [USI] agrees to perform all duties and obligations to the best of [its] ability to honor the terms of the agreement.

(Defs.' Moving Br., Ex. A. ¶¶ 4, 10, 16 (emphases omitted).)

_____

[2] Any relevant contested facts are discussed in this Opinion's Discussion section.

In 2002, All Risks entered into a Program Administrator Agreement ("PA Agreement") with Mt. McKinley Managers, LLC ("McKinley") in McKinley's capacity as an underwriting manager for Everest. (Defs.' Statement of Material Facts ("DSMF") ¶¶ 1, 13, ECF No. 145-1; Pl.'s Resp. to Defs.' Statement of Material Facts ("PRDSMF") ¶¶ 1, 13, ECF No. 152; *see also* Defs.' Moving Br., Ex. B *6,[3] ECF No. 146-3.) Under the PA Agreement, All Risks was designated an Administrator who acted as an agent for McKinley in procuring and evaluating insurance "applications for surplus lines insurance" on behalf of Everest. (*See* Defs.' Moving Br., Ex. B at 1, ECF No. 146; *see also* SAC ¶ 18.) The PA Agreement, in part, provided that All Risks "shall not waive any condition or make any change to [Everest's] insurance policies, endorsements [,] or applications without [McKinley's] prior written consent." (Defs.' Mot. for Summ. J., Ex. B at 2.)

Years later, in 2012, USI, acting as an insurance broker, sought a commercial general liability insurance policy for its client Monitronics International, Inc.[4] ("Monitronics"). (PSMF ¶¶ 5-6, 10; DSMF ¶¶ 5-6, 10.) Prior to USI's search, Monitronics had a general commercial liability insurance policy from First Mercury Insurance Company ("First Mercury"). (PSMF ¶ 9; DRPSMF ¶ 9.)

On June 5, 2012, USI transmitted two insurance applications on behalf of Monitronics from USI's office in Houston, Texas to All Risks in Maryland. (PSMF ¶ 11; DRPSMF ¶ 11.) Specifically, USI sought to procure a comprehensive general liability policy and umbrella policy (the "CGL") for Monitronics and requested a quote from All Risks. (PSMF ¶ 11; DRPSMF ¶ 11; *see* DSMF ¶ 37; PRDSMF ¶ 37.)

---

[3] Pin-cites prefaced by asterisks refer to the pagination atop the CM/ECF header.

[4] Monitronics was a home alarm company based in Texas. (PSMF ¶ 5; DRPSMF ¶ 5.)

On August 20, 2012, All Risks's underwriter James LaPlante ("LaPlante") emailed USI a quote for a Monitronics CGL through Everest. (DSMF ¶¶ 19, 41; PRDSMF ¶¶ 19, 41.) The initial quote was subject to certain terms and conditions, including, in pertinent part, a Recording and Distribution of Material or Information in Violation of Law Exclusion (the "RDM Exclusion").[5] (PSMF ¶ 16; DRPSMF ¶ 16.)

On August 21, 2021, after discussions with USI, LaPlante issued a revised quote for the proposed CGL. (DSMF ¶ 42; PRDSMF ¶ 42.) As part of this revised quote, and at USI's request, All Risks deleted the RDM Exclusion from the CGL. (PSMF ¶¶ 44-45; DRPSMF ¶¶ 44-45.) After further discussions between Rob Broz ("Broz"), a senior vice president at USI, and LaPlante, LaPlante emailed his supervisor Chris McGovern ("McGovern"), a senior vice president and program director with All Risks. (DSMF ¶¶ 4, 9, 44; PRDSMF ¶¶ 4, 9, 44.) LaPlante wrote in his email correspondence to McGovern:

> [USI] has a concern with our including attached [RDM Exclusion]. [USI] claims Monitronics would not violate any laws – but they have no control over their dealers who would. They have a Cyber Liability policy so that would cover [what the RDM Exclusion typically would cover]. . . . . Can we delete [the RDM Exclusion]? Don't want this to be a deal breaker."

(DSMF ¶ 45; PRDSMF ¶ 45.) McGovern replied "[a]s long as these exposures are covered elsewhere, I do not see a problem deleting the form." (DSMF ¶ 46; PRDSMF ¶ 46.) LaPlante then emailed Broz that he had obtained approval to delete the RDM Exclusion. (PSMF ¶ 44; DRDSMF ¶ 44.) Accordingly, on August 22, 2012, LaPlante emailed Broz a second amended quote for the

---

[5] The RDM Exclusion pertained to the recording or distribution of material, and barred insurance coverage for claims for alleged violations of the Telephone Consumer Protection Act ("TCPA"). (*See* SAC ¶ 2; Pl.'s Opp'n Br., Ex. I, ECF No. 153.)

CGL. (DSMF ¶ 49; PRDSMF ¶ 49.) The updated quote did not contain the RDM Exclusion. (DSMF ¶ 49; PRDSMF ¶ 49.)

On August 23, 2012, All Risks and USI continued negotiations regarding other terms and conditions of the CGL. (DSMF ¶ 50; PRDSMF ¶ 50.) On August 31, 2012, Monitronics accepted the proposed CGL from Everest, and accordingly, All Risks bound insurance policies for Monitronics on behalf of Everest without the RDM Exclusion (DSMF ¶ 51-52; PRDSMF ¶ 51-52; PSMF ¶ 46; DRPSMF ¶ 46.)

After the policy was issued, USI reported a number of TCPA claims to Everest on behalf of Monitronics. (PSMF ¶ 48; DRPSMF ¶ 48.) Everest elected to defend and indemnify at least some of the TCPA claims against Monitronics. (PSMF ¶ 49; DRPSMF ¶ 49.) As a result, on October 11, 2013, Lauren Quigley, a Program Manager at Everest, sent an e-mail correspondence to McGovern reading:

> It has come to the attention of Everest . . . [that the CGL was issued] without an [RDM Exclusion]. As a result of All Risks's failure to include th[e RDM Exclusion], Everest is currently facing, and will continue to face, additional unanticipated claim/loss exposure on the policies.
>
> Please be advised that Everest will seek full reimbursement from All Risks for any and all losses, damages[,] and/or expenses incurred by Everest as a result of All Risks's failure to include [the RDM Exclusion].

(Defs.' Moving Br., Ex. I, ECF No. 145-7.)

The reimbursement that Everest sought to pursue eventually served as the basis for the original Complaint filed on this docket against All Risks. (*See generally* Compl., ECF No. 1.) On August 10, 2020, Everest settled its claims against All Risks. (Settlement Order, ECF No. 125.)

McGovern, All Risks's corporate designee in this matter,[6] testified that All Risks made its settlement payment to Everest to settle claims premised on McGovern's lack of authority to unilaterally delete the RDM Exclusion. (DSMF ¶ 59; PRDSMF ¶ 59.)

Shortly after this lawsuit was initiated by Everest, All Risks brought its original Third-Party Complaint against USI. (*See generally* Third-Party Complaint, ECF No. 13.) All Risks maintains that it would not have omitted the RDM Exclusion but for four material misrepresentations made by USI when negotiating the CGL. (*See* DSMF ¶ 62; PRDSMF ¶ 62; SAC ¶ 28.) These four misrepresentations, as alleged by All Risks in its SAC, are:

> (a) USI represented to All Risks that Monitronics'[s] former insurance carrier, First Mercury. . ., had not included the RDM [E]xclusion as part of its prior insurance policies;
>
> (b) USI represented to All Risks that as an alarm monitoring service, Monitronics did not engage in any telemarketing or other activities that could put Monitronics at risk of violating the TCPA statute;
>
> (c) USI represented to All Risks that Monitronics required all of its third-party vendors that engaged in telemarketing to execute subcontracts containing favorable hold harmless clauses obligating them to defend and indemnify Monitronics in connection with TCPA claims; and
>
> (d) USI represented to All Risks that Monitronics possessed a cyber liability insurance policy with $10 million in applicable coverage that would primarily respond to any claim or loss arising out of alleged violations of the TCPA or other similar laws and did not contain the RDM [E]xclusion or other exclusionary language.

(SAC ¶ 28.)

Ultimately, in seeking a judgment against USI, All Risks brings seven counts: (1) breach of contract; (2) breach of warranty; (3) breach of the implied covenant of good faith and fair

---

[6] McGovern testified in this lawsuit as the Federal Rule of Civil Procedure 30(b)(6) representative of All Risks. (DSMF ¶ 4.)

dealing; (4) fraud in the inducement;[7] (5) negligent misrepresentation; (6) declaratory judgment; and (7) common-law indemnity. (SAC ¶¶ 40-81.) USI moves for summary judgment on all counts.

## II.   **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine disputes of material fact exist). "[U]nsupported allegations

---

[7] While All Risks labels this count as "fraud," the Court refers to this claim as "fraud in the inducement" because that appears to be the theory of fraud All Risks alleges against USI.

in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . [T]here can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

## III.   **DISCUSSION**

All Risks's claims can be divided into: (1) contract claims; and (2) tort claims. While the Court resolves USI's motion for summary judgment as to All Risks's contract claims in this

Opinion,[8] the Court cannot resolve USI's motion for summary judgment as to All Risks's tort claims. This is because the parties disagree about what law should be applied, and consequently, brief All Risks's torts claims under the laws of different states. Accordingly, the Court reserves judgment on All Risks's tort claims, and will grant USI leave to file a renewed motion for summary judgment consistent with this Court's choice-of-law findings below.

The parties, however, do not disagree that New Jersey law governs All Risks's contract claims. (Pl.'s Opp'n Br. 5-7, ECF No. 151; *see* Defs.' Moving Br. 5-7.) As such, the Court decides USI's motion for summary judgment as to those claims.

## A.     Contract Claims

All Risks brings three Counts against USI expressly sounding in contract: (1) breach of contract; (2) breach of warranty; and (3) breach of the implied covenant of good faith and fair dealing. (SAC ¶¶ 40-61.)

### i.     *Breach of Contract and Breach of Warranty*

As an initial matter, All Risks's breach of contract claim and breach of warranty claim are duplicative of All Risks's breach of the implied covenant of good faith and fair dealing claim. Specifically, All Risks appears to argue that its breach of contract claim and breach of warranty

---

[8] The Court also resolves All Risks's "declaratory judgment claim" brought under the Declaratory Judgment Act. (SAC ¶ 77.) Declaratory judgment is a remedy, not an independent cause of action. 28 U.S.C. § 2201 (creating the "remedy" of declaratory judgment under the Declaratory Judgment Act); *Muhlbaier v. Specialized Loan Serv. LLC*, No. 18-125, 2018 WL 3238832, at *2 (D.N.J. July 3, 2018) (finding the Declaratory Judgment Act "merely defines a remedy" (quoting *Allen v. Debello*, 861 F.3d 433, 444 (3d Cir. 2016)); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406-07 (S.D. N.Y. 2010) (finding that "[d]eclaratory judgments . . . are remedies, not causes of action); *Jones v. ABN AMRO Mortg. Grp., Inc.*, 551 F. Supp. 2d 400, 406 (E.D. Pa. 2008) ("Declaratory judgment is a remedy, not a count."). Thus, to the extent that All Risks brings a declaratory judgment cause of action, USI's motion for summary judgment is granted against such claim. To the extent, however, that All Risks seeks a declaratory judgment as a remedy, the Court makes no findings on the availability of that remedy at this time.

claim[9] stem from USI's violation of the "good faith" provision in the Broker Agreement. (*See* Pl.'s

Opp'n Br. 8.) Importantly, the implied covenant of good faith and fair dealing is contained in every

contract in New Jersey. *Kalogeras v. 239 Broad Ave., L.L.C.*, 997 A.2d 943, 953 (N.J. 2010)

(internal quotation marks and citations omitted). As such, the "good faith" provision in the Broker

Agreement that All Risks alleges USI violated is effectively just a memorialization of the implied

covenant of good faith and fair dealing already inherent in every New Jersey contract. (*Compare*

Defs.' Moving Br., Ex. A. ¶ 16 (emphases omitted) (providing under the "Good Faith" provision

to the Broker Agreement that "[USI] agrees to perform all duties and obligations to the best of [its]

ability to honor the terms of the agreement") *with Wood v. N.J. Mfrs. Ins. Co.*, 21 A.3d 1131, 1140

(N.J. 2011) (describing the implied covenant of good faith and fair dealing as establishing in every

contract that "neither party shall do anything which will have the effect of destroying or injuring

the right of the other party to receive the fruits of the contract."); *see also Spellman v. Express

Dynamics, LLC*, 150 F. Supp. 3d 378, 389 (D.N.J. 2015) (finding that "[w]here a party has

breached a specific term of a contract, that party cannot be found separately liable for breaching

the implied covenant of good faith and fair dealing 'when the two asserted breaches basically rest

on the same conduct.'" (quoting *Wade v. Kessler Inst.*, 798 A.2d 1251, 1259-60 (N.J. 2002))).)

Therefore, USI's motion for summary judgment as to Counts I and II is granted, and the Court will

---

[9] The Court notes All Risks's argument about USI failing to submit a timely warranty statement.
(Pl.'s Opp'n Br. 15-16.) This argument, however, does not appear to establish or suggest that USI
breached any warranty. Rather, All Risks appears to argue that USI's failure to timely submit a
warranty statement was evidence of improper, misleading behavior by USI while the parties were
contractually bound. (*See id.*) Moreover, All Risks provides in its SAC, to substantiate its breach
of warranty claim, that "USI warranted and represented it would [be] truthful." (SAC ¶ 47.) This
language suggests that All Risks's breach of warranty claim is premised on the "Good Faith"
clause which All Risks argues required USI to be truthful in all dealings. (SAC ¶ 54.) In this way,
All Risks's breach of warranty claim is just a reframing of its breach of the implied of good faith
and fair dealing claim.

assess all of All Risks's breach of contract arguments in the context of its breach of the implied covenant of good faith and fair dealing claim.

ii.      *Breach of the Implied Covenant of Good Faith and Fair Dealing*

USI argues that it did not breach the implied covenant of good faith and fair dealing where it performed its required obligations under the Broker Agreement. (Defs.' Moving Br. 9.) Specifically, USI maintains that its only obligation under the Broker Agreement was to provide All Risks with the type and amount of insurance requested by Monitronics. (*Id.*; *see also* Defs.' Moving Br., Ex. A ¶ 4.) To this end, USI contends, All Risks received the fruits of the Broker Agreement with USI when All Risks obtained the opportunity to quote and bind the Monitronics policy. (Defs.' Reply Br. 3, ECF No. 156.)

All Risks argues that USI improperly "attempts to cabin its duty of good faith and fair dealing to nothing more than correctly stating the type and amount of coverage to be considered for quotation." (Pl.'s Opp'n Br. 9.) All Risks contends that "USI failed to operate in good faith in its business dealings and deprived All Risks of the benefit of its bargain because in acting as [Monitronics'] agent, USI made several materially false and misleading statements to induce All Risks to extend coverage." (*Id.*)

As previously established, New Jersey law provides that the implied covenant of good faith and fair dealing is contained in every contract. *Kalogeras*, 997 A.2d at 953 (internal quotation marks and citations omitted). Therefore, the Broker Agreement between USI and All Risks contained the implied covenant of good faith and fair dealing, as well as a duplicative express provision that USI had a duty to abide by that covenant and operate in good faith. Accordingly, to the extent USI seeks to argue its *only* obligation under the Broker Agreement was to provide All

Risks with the type and amount of insurance All Risks requested, such contention is rejected. (*See*

Defs.' Moving Br. 9.)

The implied covenant of good faith and fair dealing requires that neither party do anything

which will injure the right of the other party to receive the benefits of the agreement. *Wood*, 21

A.3d at 1140. "[A]n allegation of bad faith or unfair dealing should not be permitted to be advanced

in the abstract and absent an improper motive." *Wade*, 798 A.2d at 1260. Furthermore, the implied

covenant of good faith and fair dealing applies to a contract's performance and its enforcement.

*Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001). Thus, in order to successfully

show a breach of the implied covenant of good faith and fair dealing, a plaintiff must prove that:

> (1) a contract exists between the plaintiff and the defendant; (2) the
> plaintiff performed under the terms of the contract [unless excused];
> (3) the defendant engaged in conduct, apart from its contractual
> obligations, without good faith and for the purpose of depriving the
> plaintiff of the rights and benefits under the contract; and (4) the
> defendant's conduct caused the plaintiff to suffer injury, damage,
> loss, or harm.

*M&T Bank v. Worldwide Supply LLC*, No. 20-6378, 2021 WL 9667960, at *3 (D.N.J. Feb. 17,

2021) (internal quotation marks and citation omitted).

Here, All Risks's breach of the implied covenant of good faith and fair dealing claim fails

because there is no evidence in the record to suggest that any alleged misrepresentations by USI

sought to deprive, or deprived, All Risks of its benefits under the Broker Agreement. To be clear,

this is because All Risks does not allege that it did not receive the rights and benefits to which it

was entitled under the Broker Agreement: premiums from USI for the procurement of Everest

policies for Monitronics. (*See* Defs.' Moving Br., Ex. A. ¶ 1.) Instead, the gravamen of All Risks's

allegations against USI is that USI, with bad faith, induced All Risks to extend coverage from

Everest, which led All Risks to suffer damage under the PA Agreement it has with Everest. (DSMF

¶¶ 59, 62; PRDSMF ¶¶ 59, 62; *see generally* Settlement Order; Pl.'s Opp'n Br. 9.) As such, All Risks's contract claims are misplaced because All Risks did not suffer damages under the Broker Agreement. Rather, any alleged harm by USI's misrepresentations affected All Risks's ability to benefit from the PA Agreement or exposed All Risks to liability under the PA Agreement, an Agreement to which USI was not a party. *See Westmont Dev. Grp., LLC v. Township of Haddon*, 625 F. Supp. 2d 178, 195 (D.N.J. 2009) (finding that the implied covenant of good faith and fair dealing applies where one contract-party's behavior "destroy[ed] or injur[ed]" the rights of the other party to receive benefits of a contract that binds *both* parties.)

Ultimately, for these reasons, the allegations against USI sound only in tort, i.e., the violation of non-contractual duties. Accordingly, USI's motion for summary judgment on All Risks's breach of the implied covenant of good faith and fair dealing claim is granted.

**B.      Choice of Law**

All Risks brings three Counts against USI sounding in tort: (1) negligent misrepresentation; (2) fraud in the inducement; and (3) common-law indemnity. (SAC ¶¶ 62-73.) All Risks asserts that all claims are subject to Maryland and/or Texas law as opposed to New Jersey law. (Pl.'s Opp'n Br. 17.)

Procedurally, the first step in a choice-of-law analysis is "to determine whether an actual conflict [of law] exists through an examination of the substance of the potentially applicable laws to determine whether there is a distinction between them." *Calabotta v. Phibro Animal Health Corp.*, 213 A.3d 210, 218 (N.J. Super. Ct. App. Div. 2019) (internal quotation marks omitted) (quoting *P.V. ex rel T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008). Importantly, "[c]hoice-of-law analysis takes place on an issue-by-issue basis." *Howmedica Osteonics Corp. v. Howard*,

No. 19-19254, 2022 WL 16362464, at *13 n.9 (D.N.J. Oct. 28, 2022). If there is no conflict, there

is no choice-of-law issue to be resolved, and the court applies the law of the forum state. *Id.* at *14.

If a conflict is found to exist, "[a] court sitting in diversity must follow the substantive

choice-of-law rules of the forum state" when conducting a choice-of-law analysis. *Red Roof*

*Franchising, LLC v. Patel*, 877 F. Supp. 2d 124, 130 (D.N.J. 2012) (citing *Robeson Indus. Corp.*

*v. Hartford Acc. & Indem. Co.*, 178 F.3d 160, 165 (3d Cir. 1999)). In tort matters, New Jersey

courts apply the "most-significant-relationship" test to resolve choice-of-law questions. *Halliday*

*v. Bioreference Lab'ys, Inc.*, No. A-3219-19, 2022 WL 3051348, at * 13 (N.J. Super. Ct. App. Div.

Aug. 3, 2022) (internal quotation marks omitted) (quoting *Calabotta*, 213 A.3d at 219); *Calabotta*,

213 A.3d at 219-20 (stating that the New Jersey Supreme Court "adopted the Restatement's

most-significant-relationship test" for torts (citing *In re Accutane Litig.*, 194 A.3d 503, 519 (N.J.

2018)). This test is set forth in the Restatement (Second) of Conflicts of Law ("the Restatement").

*Walters v. Safelite Fulfillment Inc.*, No. 21-2054, 2022 WL 15377887, at *3 (3d Cir. 2022) (citing

*P.V.*, 962 A.2d at 460); *Grandalski v. Quest Diagnostics Inc.*, 767 F. 3d 175, 180 (3d Cir. 2014).

Where torts sounding in fraud and misrepresentation are at issue in a choice-of-law

analysis, Section 148 of the Restatement sets forth the factors for a court to consider when

analyzing the "most-significant-relationship" test. *Maniscalco v. Brother Int'l (USA) Corp.*, 709

F.3d 202, 207 (3d Cir. 2013) (citation omitted); *see also Dunn v. PHH Mortg. Corp.*, No. 20-5848,

2021 WL 870659, at *7 (D.N.J. Mar. 9, 2021) (citing RESTATEMENT (SECOND) OF CONFLICT OF

LAWS § 148 (1971)). Specifically, Section 148(2) governs a court's choice of law analysis where,

as here, "misrepresentations were not made and received in the same state." *Grandalski*, 767 F.3d

at 181; *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148(2); PSMF ¶ 21 (maintaining

that USI's alleged misrepresentations were made during the CGL negotiations); PSMF ¶ 11

(suggesting that all times relevant, USI was in Texas and All Risks was in Maryland); DRPSMF

¶ 11). The factors set forth under Section 148(2) for considering what law should apply are:

> (a) The place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) The place where the plaintiff received the representations,
>
> (c) The place where the defendant made the representations,
>
> (d) The domicile, residence, nationality, place of incorporation, and place of business of the parties,
>
> (e) The place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) The place where the plaintiff is to render performance under the contract which [it] has been induced to enter by the false representations of the defendant.

*Universal Prop. Srvs. Inc. v. Lehigh Gas Wholesale Srvs., Inc.*, No. 20-3315, 2021 WL 118940, at

*12 (D.N.J. Jan. 13, 2021) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148(2)).

For brevity, because the laws of three states are at issue, Texas, Maryland, and New Jersey,

the Court will conduct its choice-of-law analysis in reverse order. Accordingly, the Court will first

consider what state has the most significant relationship to All Risks's tort claims, before assessing

whether that state's laws conflict with the forum state's laws.

The Court finds that under Section 148(2), Maryland, not Texas or New Jersey, has the

most significant relationship to the underlying tort disputes in this case. All Risks is a Maryland

corporation with a principal place of business in Maryland. (DSUF ¶ 6; PRDSUF ¶ 6.) As such,

All Risks was in Maryland when all alleged misrepresentations were made to it. (PSMF ¶ 11;

DRPSMF ¶ 11.) Thus, the first and second factors favor the application of Maryland law. As to

the third factor, USI was located in Houston, Texas when it made the alleged misrepresentations

to All Risks. (PSMF ¶ 11; DRPSMF ¶ 11.) As such, the third factor favors the application of Texas law.

The fourth factor favors the application of Maryland law. All Risks is a Maryland corporation with its principal place of business in Maryland, and USI is a Texas corporation. (DSUF ¶¶ 3, 5; PRDUSF ¶¶ 3, 5.) The Comments to the Restatement, however, are useful in deciding which contact is more significant. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148, Comment I. Specifically, Comment I suggests that in the case of a dispute between corporations, such as the case here, the principal place of business of the plaintiff is typically "of substantial significance when the loss is pecuniary in its nature . . . because a financial loss will usually be of greatest concern to the state with which the person suffering the loss has the closest relationship." *Id.* Maryland being All Risks's principal place of business, the fourth factor favors the application of Maryland law.

The Court need not evaluate the fifth and sixth factors because it appears such factors are inapplicable on the facts of this case. Even if the factors were applicable, the Court's balance of the above factors already favors the application of Maryland law, as opposed to Texas or New Jersey law, notwithstanding any determination as to the fifth and sixth factors. Therefore, for the reasons outlined above, the Court finds that where a conflict of law exists, Maryland law should be applied to All Risks's tort claims.

### C.     Conflict-of-Law Analyses

#### i.     *Negligent Misrepresentation*

As to All Risks's negligent misrepresentation claim, the Court reserves judgment on whether Maryland and New Jersey laws conflict, justifying a choice-of-law analysis.

Under both Maryland and New Jersey law, a plaintiff must show that defendant owed plaintiff a duty in order to sustain a negligent misrepresentation claim. *In re Hartman*, No. 15-7093, 2017 WL 2230336, at *3 (D.N.J. May 22, 2017); *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 155 A.3d 445, 461 n.18 (Md. 2017). In making their conflict-of-law arguments, the parties seek to find case law that establishes a legal duty in the exact factual posture of this case. (*Compare* Defs.' Moving Br. 28 (assessing a Sixth Circuit case arising out of Ohio that analyzed whether insurance intermediaries owed duties to each other) *with* Pl.'s Opp'n Br. 18-19 (seeking to construe Maryland case law to find a duty between insurance intermediaries, but where the parties in that case are two sisters and an insurance company (citing *UBS Fin. Servs., Inc. v. Thompson*, 94 A.3d 176, 191 (Md. Ct. App. 2014)). Such factual mirroring is not required for the Court to find a duty, and instead, both Maryland and New Jersey have policy-based tests for determining if a duty exists. *Cf. 100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1, 10 (Md. 2013) (finding that duty is a question of law for the court and that "determining whether 'an actionable duty exists represents a policy question of whether the specific plaintiff is entitled to protection from the acts of the defendant'"); *Bergen Beverage Distrib. LCC v. E. Distrib.*, No. 17-4735, 2022 WL 833373, at * 10 (D.N.J. Mar. 21, 2022) (interpreting New Jersey law and finding that under New Jersey law "[t]o determine the existence of a duty, the court makes a value judgment that requires a 'weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution'").

For these reasons, the Court is not inclined to find that a conflict of law exists, but out of

an abundance of caution and given the parties limited briefing on this issue, the Court will reserve

judgment pending any additional briefing by the parties.[10]

        ii.     *Fraud in the Inducement*

There is no conflict of law necessitating a choice-of-law analysis as to All Risks' fraud in

the inducement claim.

Under Maryland law, to prevail on a claim for fraud, a plaintiff must show:

> (1) that the defendant made a false representation to the plaintiff,
> (2) that its falsity was either known to the defendant or that the
> representation was made with reckless indifference as to its truth,
> (3) that the misrepresentation was made for the purpose of
> defrauding the plaintiff, (4) that the plaintiff relied on the
> misrepresentation and had the right to rely on it, and (5) that the
> plaintiff suffered compensable injury resulting from the
> misrepresentation. Each of these elements must be proven by clear
> and convincing evidence.

*Access Funding, LLC v. Linton*, 290 A.3d 112, 142-43 (Md. 2022) (quoting *Gourdine v. Crews*,

955 A.2d 769, 791 (Md. 2008)). In New Jersey, to state a claim for fraudulent inducement a

plaintiff similarly must show by clear and convincing evidence: (1) a material misrepresentation

of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an

intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and

(5) resulting damages. *McMullin v. Casaburi*, No. A-3411-16T3, 2018 WL 3673256, at *3 (N.J.

Super. Ct. App. Div. Aug. 3, 2018) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367

---

[10] The Court also notes that under both New Jersey and Maryland law, the analysis of a duty and
the applicability of the economic loss doctrine overlap. *Cf. 100 Inv.*, 60 A.3d at 9-14 (exploring
the overlap in the context of the economic loss doctrine); *Bergen Beverage*, No. 17-4735, 2022
WL 833373, at * 9-10 (hinting at this interplay in the context of a negligence and economic loss
doctrine discussion). The parties should be cognizant of this interplay when submitting future
briefing.

(1997)); *see also Turbulent Diffusion Tech. Inc. v. Amec Foster Wheeler N. Am. Corp.*, No. 15-7105, 2017 WL 1752951, at *5 (D.N.J. May 4, 2017); *Luscko v. S. Container Corp.*, No. 06-3896, 2009 WL 5171868, at *4 n.1 (D.N.J. Dec. 23, 2009).

As these two tests appear identical and the parties offer no briefing to the contrary, the Court will employ New Jersey law in evaluating All Risks's fraud in the inducement claim. *Howmedica*, 2022 WL 16362464, at *14 (finding if there is no distinction between the potentially applicable laws of two states, then the court must apply the law of the forum state).

       *iii.*     *Common-Law Indemnity*

Both Maryland and New Jersey provide for common-law indemnity. *Max's of Camden Yards v. A.C. Beverage*, 913 A.2d 654, 659-60 (Md. Ct. App. 2006); *Borough of Edgewater v. Waterside Constr., LLC*, No. 14-5060, 2021 WL 4059850, at *11 (D.N.J. Sept. 3, 2021) (collecting cases).

New Jersey law forecloses an indemnity claim where the party seeking indemnity is at least partly at fault for the harm to the third party. *West v. De Block*, No. 17-8894, 2020 WL 5820986, at *7 (D.N.J. Sept. 30, 2020) (citing *Cartel Cap. Corp. v. Fireco of N.J.*, 410 A.2d 674, 683 (N.J. 1980)). Maryland, however, does not foreclose an indemnity claim where the party seeking indemnity is at least partly at fault. *Hanscome v. Perry*, 542 A.2d 421, 427 (Md. Ct. App. 1988); *see also Max's of Camden Yards*, 913 A.2d at 659-60 (exploring this distinction further). As such, a conflict of law exists as to All Risks's common-law indemnity claim and the Court will apply Maryland law in evaluating USI's motion for summary judgment on All Risks's common-law indemnity claim.

## IV.    **CONCLUSION**

For the reasons outlined above, USI's motion for summary judgment is granted as to All Risks's contract claims and declaratory judgment claim. This Court reserves judgment on All Risks's negligent misrepresentation, fraud in the inducement, and common-law-indemnity claims. The Court will grant USI leave to file a new summary judgment motion consistent with the choice-of-law findings of this Opinion. An appropriate Order will accompany this Memorandum Opinion.

DATED: JUNE 30, 2023

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE